IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

MARIO MENDIOLA,                          §

    Plaintiff,

v.                                       §          Cause No.  CV – 2:07 CV
                                                    469-MEF

VISION HOSPITALITY, INC. and
I.T. MONTGOMERY, LLC d/b/a
QUALITY INN & SUITES
CONFERENCE CENTER and JOHN
TAMPA Individually,

    Defendants.                          §

<u>PLAINTIFF'S MOTION FOR CONTINUANCE, OBJECTIONS TO
DEFENDANTS' SUMMARY JUDGMENT EVIDENCE AND
PRELIMINARY RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW Plaintiff, Mario Mendiola, and respectfully files this

Motion for Continuance, Objections to Defendants' Summary Judgment

Evidence and Preliminary Response in Opposition to Defendants' Motion

for Summary Judgment.  In support hereof, Plaintiff would show this Court

the following:

I.

<u>MOTION FOR CONTINUANCE</u>

At present, discovery is far from complete.  Defendants acknowledge

to the Court that there have been "delays in the production of documents and

correspondingly in the taking of depositions." What is not acknowledged by the Defendants is that all such delays have *nothing* to do with the Plaintiff; they have to do with the Defendants. On November 2, 2007 Plaintiff sent his first set of Requests for Production and Interrogatories to Defendants. In late November, 2008 Defendants requested, and Plaintiff granted, an extension of time for Defendants to file Objections and Responses to this first round of discovery.

After the extension of time had expired, Plaintiff received nothing from Defendants. Thus, on January 28, 2008 Plaintiff sent a letter to Defense counsel requesting answers to Plaintiff's discovery requests. (See Exhibit "A", attached hereto and incorporated herein by reference) As the January 28, 2008 letter makes clear, as of that date Plaintiff had received no responsive documents to Requests for Production Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18, 19, 20 and 21. Defendants did not even respond to, or provide documents requested in Request No. 15.

It was also apparent that Defendants sent a "draft" of their answers to Interrogatories because the majority of questions were simply not answered at all; i.e. Interrogatory Nos. 3, 4, 5, 6, 8, 11, 13, 14 and 15. In addition the Interrogatories answers were not verified. Rather than file the required discovery responses or responding to Plaintiff's inquiries regarding the

same, Defendants noticed the deposition of Plaintiff without consulting Plaintiff's counsel.[1]

After receiving no response to the January 28, 2008 letter, other than a deposition notice for the Plaintiff, Plaintiff's counsel sent another letter to Defense counsel on February 28, 2008 pointing out the fact that no discovery responses have been received and no documentation provided. Plaintiff's counsel then received a letter from Defense counsel, as well as a telephone call, regarding the missing discovery responses. (See Exhibit "A", attached hereto and incorporated herein by reference) Defendants finally sent their discovery responses *on March 14, 2008*.

Because of the obvious problems created by Defendants' failure to provide timely discovery responses, Plaintiff is unable to provide sworn testimony of the Defendants in opposition to the current Motion. Plaintiff is, however, able to provide his own affidavit, which is attached hereto in support of this response. While Plaintiff believes that his affidavit and the attachments thereto are sufficient to show the existence of genuine issues of material fact as to each element of his claims, pursuant to Federal Rule 56(f) and, to the extent the Court finds Plaintiff's summary judgment evidence

---

[1] This deposition was passed by agreement, since Plaintiff had not yet received proper discovery responses.

lacking, and/or in the interest of justice, Plaintiff respectfully requests that the Court grant a continuance of this Summary Judgment proceeding so that discovery can be completed. The current discovery deadline is set for May 22, 2008. Plaintiff would therefore request that the Court either deny the Motion upon the evidence in the record at present, or continue the hearing of this matter until a date convenient for the Court a reasonable time after the expiration of the discovery deadline.

II.

PORTIONS OF DEFENDANTS' AFFIDAVITS CONTAIN
CONCLUSIONS, INCOMPETENT LEGAL OPINIONS, ARE SELF
SERVING, AND SHOULD BE STRIKEN

Portions of the affidavits offered in support of Defendants' current Motion are conclusory and should not be considered by this Court. Case law clearly holds that portions of an affidavit that are nothing more than conclusions, incompetent legal opinions, or hearsay are entitled to no weight. Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992); Hughes v. United States, 953 F.2d 531(9th Cir. 1992). Attached hereto as Exhibit 3 are highlighted portions of the affidavits offered by Defendant which Plaintiff argues should not be considered by this Court. Specifically, those portions are as follows:

1.    Affidavit of John Tampa; paragraph 5, sentence 2;

4

2.    Affidavit of Beverly Woods; paragraph 3, sentence 2; and

3.    Affidavit of Timothy Banks, paragraph 3, sentence 2.

Said portions of these affidavits purporting to state the affiants' "understanding" are mere opinions and are clearly not based upon personal knowledge of the affiants. Plaintiff hereby moves this Court to strike from the record all such portions of the affidavits offered by Defendants.

III.

## PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

Attached hereto and incorporated herein by reference are the following items of summary judgment evidence:

1. Exhibit "B"; Affidavit of Mario Mendiola with attachments.[2]

IV.

## RESPONSE TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

A.    SUMMARY JUDGMENT STANDARDS

Summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. A genuine issue of material fact exists where there is an authentic issue for trial that must be decided by the trier of fact. If the evidence indicates that a reasonable fact finder could find in favor of

---

[2] Exhibit "A" is attached for purposes of the Motion for Continuance.

the non-movant, summary judgment is improper.    Anderson v. Liberty

Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

The movant has the initial burden of pointing out to the court those parts of

the record that it believes demonstrates the absence of a genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548,

2553, 91 L.Ed. 2d 265 (1981).  The burden then shifts to the non-movant to

come forward with specific facts showing the existence of genuine issues of

material fact for resolution at trial.  Matsushita Elec. Indus. Co. v. Zenith

Radio, 475 U.S. 574, 586, 106 S.Ct. 1348,1356, 89 L.Ed. 2d 538 (1986).  A

material fact is one that is outcome determinative.  National Soild Wastes

Management Assn v. Voinovich, 959 F.2d 590 (6th Cir. 1992); Licciardi v.

Kropp Forge Div. Employers Retirement Plan, 797 F.Supp. 1375 (N.D.Ill.

1992). Furthermore, the Court must view all evidence favorable to the non-

movant as true, drawing all rational and reasonable inferences in the non-

movant's favor.  Celotex, 477 U.S. at 323, 106 S.Ct. at 2553.

B.    UNDISPUTED FACTS

Plaintiff submits that the following facts are undisputed and that,

when considering those facts as well as the other items of summary

judgment evidence in the record, summary judgment is clearly in

appropriate.

1.    in early December 2005, Mario Mendiola was tentatively diagnosed with Leukemia. Early tests indicated he suffered from the disease, but an additional blood test was necessary to confirm the diagnosis and bone marrow biopsy was necessary to identify the stage of the disease, (see Exhibit B);

4.    on December 7, 2005, Mr. Mendiola informed John Tampa of his tentative diagnosis and about the necessity of the additional tests. Mr. Mendiola further stated that if he was in a late stage of the disease, he would *possibly* want to return to Texas for treatment. Mr. Mendiola was very clear that no action would be taken prior to the additional tests, (see Exhibit B);

5.    Mr. Mendiola avers that he never spoke to Beverly Woods about his condition and never spoke to her about him returning to Texas, (see Exhibit B);

6.    Mr. Mendiola told Timothy Banks about his tentative diagnosis of leukemia, but never discussed any potential plans he had regarding treatment. Mr. Mendiola avers he never discussed returning to Texas with Mr. Banks, (see Exhibit B);

7.    on December 12, 2005, Mr. Mendiola received a fax from John Tampa informing me that he had hired another general manager and that he would have to leave the hotel by December 20, 2005, (see Exhibit B);

8.    After Mr. Mendiola received the fax on December 12, 2005, he called John Tampa numerous times on his cell phone. Mr. Tampa never answered or returned any of his calls, (see Exhibit B);

9.    Mr. Mendiola responded to John Tampa's memo on December 14, 2005 in writing. In that document, Mr. Mendiola made it clear that he had not resigned, (see Exhibit B);

10.    On December 22, 2005, Mr. Mendiola received the results from the additional blood test confirming that he had leukemia. A follow-up bone marrow biopsy indicated the disease was in remission and the only treatment necessary were follow-up tests to monitor the disease, (see Exhibit B);

11.    After being terminated by Defendants, Mr. Mendiola filed for unemployment benefits with the State of Alabama Department of Industrial

Relations Unemployment Compensation Agency in early January 2006, (see Exhibit B);

12.     The State of Alabama Department of Industrial Relations Unemployment Compensation Agency found that Mr. Mendiola had been terminated without cause and awarded me unemployment benefits, (see Exhibit B);

13.     Mr. Mendiola filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission against I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center, (see Exhibit B);

14.     On January 12, 2007, Mr. Mendiola received a determination regarding my claim against I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center. The EEOC found there was reasonable cause to believe a violation of the Americans with Disabilities Act of 1990, as amended had occurred, (see Exhibit B);

15.     Mr. Mendiola agreed to take part in a conciliation hosted by the EEOC but I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center did not agree to take part in the conciliation, (see Exhibit B);

16.     On February 28, 2007, Mr. Mendiola received a Notice of Right to Sue from the EEOC, (see Exhibit B);

17.     At no time did Mr. Mendiola resign from his position as general manager of the Quality Inn and Suites and Convention Center. In his years within the hospitality industry, Mr. Mendiola has always provided his employer with a signed, formal letter of resignation. Mr. Mendiola never resigned and no letter of resignation exists, (see Exhibit B);

18.     Mr. Mendiola was terminated five days after he informed John Tampa that he was tentatively diagnosed with leukemia. All attempts to communicate with Mr. Tampa following notice of termination were met with failure, (see Exhibit B).

Based upon these facts, reasonable and fair-minded jurors could differ

in their conclusions. Summary judgment is therefore inappropriate.

C.    LAW AND ARGUMENT

Plaintiff alleges he was terminated from his employment by Defendants because they regarded him as disabled.  Under the ADA, a plaintiff is "regarded as" disabled if he: 1) had, or was perceived to have, a "disability"; (2) was a "qualified" individual; and (3) was discriminated against because of her disability. Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002). Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The protection for individuals "regarded as" being disabled is for individuals who are "regarded as" having "such an impairment," 42 U.S.C. § 12102(2)(C). "Such" an impairment means the same kind of impairment as would give rise to protection if it actually existed, that is, one that "substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2)(A). Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999) ("When the major life activity under consideration is that of working, the statutory phrase `substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). "The inability to perform

a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Thus, an impairment must preclude, or at least be perceived to preclude, an individual from more than one type of job, even if the job foreclosed is the individual's job of choice. See Sutton, 527 U.S. at 492, 119 S.Ct. at 2151. However, a person does not have to have an obvious or specific handicap in order to fall into this category. The Supreme Court in *Sutton* explained,

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual — it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489.

Equal Employment Opportunity Commission regulations define a physical impairment as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine . . . .

29 C.F.R. § 1630.2(h)(1).

Clearly, Leukemia qualifies as a physical impairment under EEOC guidelines. This being said, to win at trial Plaintiff must show that at the time Defendants fired him (1) his Leukemia did not actually substantially limit him in a major life activity, but (2) Defendants nonetheless *perceived* his Leukemia to be substantially limiting. Since Plaintiff's claim is a "regarded as" claim on the major life activity of working, he must demonstrate that Defendants believed that he was "unable to work in a broad class of jobs". Collado v. United Parcel Service, Co., 419 F.3d 1143, 1157 (11th Cir. 2004). In other words, that the Defendants perceived him to be "precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton, 527 U.S. at 489. While this is the burden at trial, the burden in summary judgment is to point out the existence of genuine issues of material fact. Without having an opportunity to depose the Defendants' representative, Plaintiff cannot point to cross-examination testimony to controvert Mr. Tampa's self-serving affidavit where he claims innocence and/or lack of discriminatory intent. However, Plaintiff would suggest that the summary judgment evidence showing that Defendants did not even consider Plaintiff's insistence that he had not actually resigned, is indicative of the Defendants' state of mind and belief that Plaintiff was unable to perform any management level job or any other job at their hotel. In either

event, Plaintiff asks the Court to permit discovery to be completed on these issues.

1.   *Vision Hospitality may be Liable under the ADA if it was a Co-Employer of Plaintiff*

Plaintiff has alleged that both Defendants in this case were joint employers. Joint employers are determined with reference to the test stated in *National Labor Relations Board v. Browning-Ferris Industries*, 691 F.2d 1117 (3d Cir. 1982):

> . . . [O]ne employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

Id. at 1122 (citation omitted).  Thus, whether Vision Hospitality retained sufficient control over the operations of I.T. Montgomery, LLC, d/b/a Quality Inn & Suites Conference Center to be considered a joint employer is a fact question. See Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964).

When the parties in this case agreed to dismiss John Tampa individually from this lawsuit, the did so with the express understanding that discovery would be conducted to enable Plaintiff to determine whether there is sufficient connection between Vision Hospitality and I.T. Montgomery,

LLC to consider them joint employers of Plaintiff.  Again, Plaintiff received the first responses to his discovery requests less than two weeks ago, at no fault of his own, and has not had the opportunity to depose representatives of the Defendants.  Plaintiff respectfully requests more time to complete this necessary discovery, and to provide a supplemental response, prior to the Court ruling on the present Motion.

2.    *There are Fact Questions as to Whether Defendants' Perceived Plaintiff as Having an Physical Impairment that Substantially Limited the Life Activity of Working*

Plaintiff moved from Texas to Montgomery to work for Defendants. (See Exhibit "B")   After a year of service to Defendants, Plaintiff had the misfortune of developing Leukemia.  Within eight (8) days of informing Defendants' principal, John Tampa, of this diagnosis and the possible need for treatment, Plaintiff was summarily terminated.  (See Exhibit "B")  All efforts of the Plaintiff to convince his employer not to terminate his employment were met with silence.  Plaintiff alleges that he was terminated because his employer perceived him as having a disability that substantially limited his ability to engage in the life activity of working.

A potential diagnosis of Leukemia, standing alone, should not give rise to the conclusion that one is incapable of engaging in the life activity of work.  <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723, 725-26 (5th Cir. 1995)

53 F.3d at 726 ("[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA [because] the statute requires an impairment that substantially limits one or more of the major life activities").  Nevertheless, the summary judgment evidence raises genuine issues of material fact as to whether Defendants actually reached such a conclusion.  For example, when Plaintiff learned that he was being replaced, he attempted to communicate with Mr. Tampa to remind him that he had not resigned. (See Exhibit "B")   Mr. Mendiola placed calls to Mr. Tampa that went unanswered. (See Exhibit "B")   Mr. Mendiola then wrote a letter to Mr. Tampa insisting that he had not resigned. (See Exhibit "B")   This letter was totally ignored by the Defendants. (See Exhibit "B")  Mr. Tampa did not bother to wait for Mr. Mendiola to confirm whether his Leukemia was active or in remission, prior to terminating his employment. (See Exhibit "B")  In addition, the State of Alabama Department of Industrial Relations Unemployment Compensation Agency made an administrative determination that Mr. Mendiola *was terminated* without cause and awarded him unemployment benefits. (See Exhibit "B")   This determination was not appealed by any Defendant herein.

The self-serving affidavit of John Tampa does not make any of the facts alleged by Defendants "undisputed" nor does it entitle Defendants to

summary judgment.  Moreover, the affidavit of Mario Mendiola squarely controverts the averments made by Mr. Tampa and the other witnesses. Drawing all reasonable inferences in favor of Mr. Mendiola, nothing other than the fact that Mr. Mendiola was diagnosed with Leukemia could have resulted in his termination.  While Plaintiff does not anticipate Defendants admitting to their discriminatory acts, such evidence is not required. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Summary judgment is inappropriate.

3.    *The EEOC Made a Finding of Cause in this Case*

On January 12, 2007, the EEOC issued a probable cause finding in the present case.  (See Exhibit "B")  "[A]n EEOC determination prepared by professional investigators on behalf of an impartial agency, [is] highly probative." Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 (9th Cir.1981) (citing Peters v. Jefferson Chem. Co., 516 F.2d 447, 450-51 (5th Cir.1975)).  The Eleventh Circuit considers EEOC determinations to be "highly probative," even though there may be circumstances in which that probative value, although properly considered by a trial judge in a bench trial, nonetheless is outweighed by the danger of creating unfair prejudice in the minds of a jury.  Barfield v. Orange County, 911 F.2d 644 (11th Cir. 1990)(citing Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir.

1972)).  This fact alone, while not conclusive, clearly raises genuine issue of material fact as to whether Defendants discriminated against Plaintiff because they perceived his physical impairment as substantially limiting his ability to work in a class of jobs and his chosen job (i.e. management), and that they terminated his employment for that very reason.  There are at least genuine issues of fact in this regard, precluding summary judgment.

4.    *Carruthers is not Determinative of the Present Case*

Defendants rely heavily upon the case of *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213 (2004).  The *Carruthers* case is different than the present case in several major respects.  First, the *Carruthers* case followed a trial on the merits.  Second, in the present case, Defendants claim Mr. Mendiola resigned his position.  Not only has Plaintiff contradicted this allegation with substantial evidence, but the facts clearly demonstrate the unwillingness of Defendants to even entertain the idea that Mr. Mendiola had not resigned his position; instead, they ignored him completely.  In addition, a diagnosis of "bilateral hand strain/sprain" does not equate with Leukemia by any stretch of the imagination; both in terms of its effects and duration.  Under applicable law, whether the employer regards an employee as disabled should be determined on a case by case basis.  *Carruthers* does not present the same egregious facts as the case at bar.

5.      *Mario Mendiola did not Resign*

There is significant summary judgment evidence that shows Mr. Mendiola *did not* resign and that the only motivation of the Defendants in terminating Plaintiff was directly related to his diagnosis of Leukemia. (See Exhibit "B")  In addition, it is unthinkable that a person who has a good job and is diagnosed with Leukemia would immediately resign from their employment. Drawing all reasonable inferences in favor of Mr. Mendiola, nothing other than the fact that Mr. Mendiola was diagnosed with Leukemia could have resulted in his termination.  Summary judgment is inappropriate.

IV.

PRAYER

Based upon the foregoing, Plaintiff respectfully requests that his Motion for Continuance be granted, and/or that Defendants' Motion for Summary Judgment be, in all things, DENIED.

Respectfully submitted,

THE BRYANT LAW FIRM



/S/

_____

David A. Bryant, Jr.
S.D.Texas Bar No. 17501
18 Augusta Pines Dr., Suite 200E
Spring, Texas 77389
(281) 290-8866, Fax: (281) 290-8867


MORRIS & MCCANNALLY, LLC

D. Jason Britt (BRI048)
50 Wisteria Place
P.O. Box 490
Millbrook, Alabama 36054

ATTORNEYS FOR PLAINTIFF


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via email, certified mail and/or facsimile on this 31st day of March, 2008.


/S/

_____

David A. Bryant, Jr.

EXHIBIT "A"

# THE BRYANT LAW FIRM



18 AUGUSTA PINES DRIVE
SUITE 200 EAST
SPRING, TEXAS 77389

DAVID A. BRYANT, JR.±                                    TEL: 281-290-8866
SANFORD B. KAHN*                                        FAX: 281-290-8867
MICHAEL J. VALENTINE*
MICHAEL DELAPAZ*

---

±BOARD CERTIFIED, PERSONAL INJURY TRIAL LAW
*OF COUNSEL

---

January 28, 2008

Mr. Kyle T. Smith                          Via Fax: 205-930-5101
2311 Highland Ave. South
Birmingham, AL 35255-5727

Re:    Cause No.  CV – 2:07 469 CV MEF; *Mario Mendiola v. Vision
       Hospitality, Inc. et al*; In The United States District Court for the
       Middle District of Alabama

Dear Mr. Smith:

       Back in November, 2007 we sent you the following items:

1.     Plaintiff's First Set of Requests for Production to Defendants;
2.     Plaintiff's First Set of Interrogatories to Defendant Vision
       Hospitality, Inc.; and
3.     Plaintiff's First Set of Interrogatories to Defendant I.T.
       Montgomery, LLC.

We provided your clients a lengthy extension, after which, you all
provided nothing of substance.  I need to receive copies of any and all
responsive documents referenced in your answers to our Requests for
Production Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18, 19, 20 and
21.  I also need a response and documents requested in Request No. 15.

1

In addition, it appears to me that you all sent over a "draft" of your answers to Interrogatories for both of your clients because the majority of questions are simply not answered at all; i.e. Interrogatory Nos. 3, 4, 5, 6, 8, 11, 13, 14 and 15. In addition the Interrogatories answers are not verified. I cannot imagine that this was your intent. In any event, this is a significant problem. I need answers, without objections, to each of these Interrogatories, along with your clients' verifications, within five (5) days.

I challenge the legitimacy of your objections to Interrogatory Nos. 1, 7, 9, 12 and 16. Please advise if I can expect supplemental answers in this regard and if not, why. We have a discovery deadline in April, and motions deadline in March so we need to deal with these issues as soon as possible.

I also need deposition dates for your client's representative, John Tampa, as well as Beverly Woods and Timothy Banks. If these last two individuals are not currently employed by your clients, then please provide updated information for them so I may issue a subpoena.

Sincerely,

David A. Bryant, Jr.

Cc:   Mr. D. Jason Britt                              Via Fax: Regular Mail
      Morris & McAnnally, LLC
      50 Wisteria Place
      P.O. Box 490
      Millbrook, Alabama 36054

2

**HP Officejet 7310**
Personal  Printer/Fax/Copier/Scanner

Log for
LAWOFFICE

Feb  05  2008  3:34PM

---

<u>**Last Transaction**</u>

| <u>Date</u> | <u>Time</u> | <u>Type</u> | <u>Identification</u> | <u>Duration</u> | <u>Pages</u> | <u>Result</u> |
|------|------|------|------|------|------|------|
| Feb  5 | 3:33PM | Fax  Sent | 12059305101 | 0:39 | 2 | OK |

**KYLE T. SMITH**

ATTORNEY AT LAW

(205) 930-5190

*ksmith@sirote.com*

# SIROTE
## — & —
# PERMUTT
A PROFESSIONAL CORPORATION

March 14, 2008

David A. Bryant, Jr., Esq.
18 Augusta Pines Drive
Suite 200E
Spring, TX 77389

Re:     Mendiola v. Vision Hospitality; et al.

Dear David:

Enclosed please find Defendants' Amended Responses to Request for Production of Documents, along with the responsive documents. You will also find enclosed Defendant I.T. Montgomery, LLC's and Defendant Vision Hospitality, LLC's Responses and Objections to Plaintiff's First Set of Interrogatories. I have confirmed these Responses with my client, and he is sending me the verification, which I will forward to you shortly. Please feel free to call me with any questions or concerns regarding these matters.

Sincerely yours,

Kyle T. Smith
FOR THE FIRM

KTS/mr
Enclosures
c:     D. Jason Britt, Esq.

DOCSBHM\1548046\1\

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH     BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727     BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE  |  205.930.5100          FAX  |  205.930.5101     URL  |  *http://www.sirote.com*

B i r m i n g h a m   |   H u n t s v i l l e   |   M o b i l e

**KYLE T. SMITH**

ATTORNEY AT LAW

(205) 930-5190

*ksmith@sirote.com*

S I R O T E

&

P E R M U T T

A PROFESSIONAL CORPORATION

March 18, 2008

**VIA E-MAIL & U.S. MAIL**
**VIA FACSIMILE**

David A. Bryant, Jr., Esq.
18 Augusta Pines Drive
Suite 200E
Spring, TX 77389

Re:    Mendiola v. Vision Hospitality, LLC; et al.

Dear David:

Enclosed please find the signature pages for Vision Hospitality and I.T. Montgomery.  If you have any questions, please do not hesitate to contact me.

Sincerely yours,

Kyle T. Smith
FOR THE FIRM

KTS/mr
Enclosures
c:      D. Jason Britt, Esq.

DOCSBHM\1548775\1\

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE  |  205.930.5100      FAX  |  205.930.5101      URL  |  *http://www.sirote.com*

B i r m i n g h a m    |    H u n t s v i l l e    |    M o b i l e

EXHIBIT "B"

## AFFIDAVIT OF MARIO MENDIOLA

THE STATE OF TEXAS                    §

COUNTY OF BEXAR                       §

1.      My name is MARIO MENDIOLA and I am over the age of 21 years. I have never been convicted of a felony and am not currently under indictment for a felony and I am fully competent to make this affidavit. Every statement contained herein is based upon my personal knowledge and is true and correct.

2.      I was orally hired by John Tampa to be the general manager of the Quality Inn and Suites and Convention Center in Montgomery, Alabama. On April 27, 2005, I confirmed our agreement in writing and John Tampa acknowledged the agreement on the same day (see Exhibit A).

3.      In early December 2005, I was tentatively diagnosed with Leukemia. Early tests indicated I suffered from the disease, but an additional blood test was necessary to confirm the diagnosis and bone marrow biopsy was necessary to identify the stage of the disease.

4.      On December 7, 2005, I informed John Tampa of my tentative diagnosis and told him about the necessity of the additional tests. I further stated that if I was in a late stage of the disease, I would *possibly* want to return to Texas for treatment. I was very clear that no action would be taken prior to the additional tests.

5.      I never spoke to Beverly Woods about my condition and never spoke to her about returning to Texas.

6.      I told Timothy Banks about my tentative diagnosis of leukemia, but I never discussed any potential plans I had regarding treatment. I never discussed returning to Texas with Mr. Banks.

7.      On December 12, 2005, I received a fax from John Tampa informing me that he had hired another general manager and that I would have to leave the hotel by December 20, 2005 (see Exhibit B).

8.    After I received the fax on December 12, 2005, I called John Tampa numerous times on his cell phone.  Mr. Tampa never answered or returned any of my calls.

9.    I responded to John Tampa's memo on December 14, 2005 in writing (see Exhibit C).  In that document, I made it clear that I had not resigned.

10.    On December 22, 2005, I received the results from the additional blood test confirming that I had leukemia.  A follow-up bone marrow biopsy indicated the disease was in remission and the only treatment necessary were follow-up tests to monitor the disease.

11.    I filed for unemployment benefits with the State of Alabama Department of Industrial Relations Unemployment Compensation Agency in early January 2006.

12.    The State of Alabama Department of Industrial Relations Unemployment Compensation Agency found that I had been terminated without cause and awarded me unemployment benefits.

13.    I filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission against I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center.

14.    On January 12, 2007, I received a determination regarding my claim against I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center.  The EEOC found there was reasonable cause to believe a violation of the Americans with Disabilities Act of 1990, as amended had occurred (see Exhibit D).

15.    I agreed to take part in a conciliation hosted by the EEOC (see Exhibit E).  Apparently, I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites and Convention Center did not agree to take part in the conciliation.

16.    On February 28, 2007, I received a Notice of Right to Sue from the EEOC (see Exhibit F).

17.    At no time did I resign from my position as general manager of the Quality Inn and Suites and Convention Center.  In my years within the hospitality industry, I have always provided my employer with a signed,

FROM :Accu-Aire Mechanical,LLC      FAX NO. :2106487377      Mar. 28 2008 12:00PM  P1

Mar 27 2008 3:08PM    THE BRYANT LAW FIRM          2812908867                    P.4

formal letter of resignation.  I never resigned and no letter of resignation exists.

18.   I was terminated five days after I informed John Tampa that I was tentatively diagnosed with leukemia.  All attempts to communicate with Mr. Tampa following notice of termination were met with failure.

Further affiant sayeth not.

_____
MARIO MANDIOLA

THE STATE OF TEXAS                §

COUNTY OF BEXAR                   §

SUBSCRIBED AND SWORN TO BEFORE ME, THE UNDERSIGNED AUTHORITY, on this _28th_ day of March, 2008.

CHELSEA A. GARCIA
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-17-2009

_____
NOTARY PUBLIC in and for
The State of Texas

My Commission Expires: 05-17-2009

# EXHIBIT A

Apr 27 05 06:00p     Mario Mendiola            210 227/552              p.2

April 27, 2005

John Tampa President / CEO
Vision Hospitality

Mr. Tampa as per our meeting on Monday April 25th 2005 regarding employment at the
Quality Inn & Suites Conference Center.

I would like to outline our verbal agreement onto paper for your review and approval
signature.

1. Mario Mendiola salary $42,000.00 annually plus 4% bonus over budgeted goal.

2. Provide a job in the hotel for Roxanna Luker at $10.00 per hour 40 hrs a week.

3. Send me a check for $275.00 for 50% of my flight plus $500.00 for moving
   expenses for a total of $775.00 overnight to EconoLodge 3821 IH35 north San
   Antonio Texas 782015

4. Provide a bedroom and living room area being two rooms NOT to include the
   office as part of the living arrangements.

5. Provide a small area in the back of the hotel for a small kennel for two dogs IF
   NEEDED.

John; I accept and prepared to begin my goal to bring your hotel to a 50% occupancy
with a $59.00 rate over the next 6months on May 9, 2005 Please understand that this a
quick fix; the ultimate goal would be to increase occupancy and rate each and every
month and maintain our position in the market place.

I would like to give my resignation notice today!! I must start making preparations to
head in your direction ASAP

Sincerely

Mario Mendiola

I, John Tampa have made these pre-employment conditions for Mr. Mario Mendiola
to assume full responsibility of operations of the Quality Inn & Suites Conference Center.

_____   4-27-05

# EXHIBIT B

# MEMO

TO: Mario Mendiola

FROM: John Tampa

DATE: December 12, 2005

SUBJECT: GM POSITION


Mario,

Per our conversation, you advised me that you and Roxanna are making plans to leave. You said you needed a week to 10 days. I have located someone for the GM position who wants to start on the 20th. As you know, the position is not one easily filled since it takes special qualifications. I would like to go ahead and make the change on the 20th with the new GM in order to avoid losing this applicant. I hope this doesn't put you and Roxanna in a crunch position of trying to move.

I appreciate everything you and Roxanna have done for the best interest of the property. I wish you both well in your future endeavors. If I can be of assistance to you in the future, please let me know.

In the meantime, I need you to keep me posted regarding what is happening on the property for the next week while you are the GM. I just found out the storage maintenance was broken over the weekend. I need to know these things.

Thanks,

John Tampa

EXHIBIT C

# MEMO

\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\

December 14, 2005

To:     John Tampa

From:   Mario Mendiola

Ref:     Response to memo dated 12/12/05

Mr Tampa lets be very clear as to why I'm leaving, a couple of weeks ago I went to the doctor for a follow-up regarding my sugar levels never did I expect the bad news that was given to me the possibility of having cancer in the blood.

I was sent to a cancer doctor for further evaluation on 12/07/05 after my appointment I called you to inform you of the findings. I advised you that the doctor simply took more blood samples and could not confirm the possibility of cancer until the results came back from the lab on 12/22/05 I informed you that of a possibility that I would want to return to San Antonio for treatment only if the results where positive.

On 12/12/05 I received a memo from you stating that you had identified a General Manager and would begin on the 20th of December. I can and will only interrupt your memo as being TERMINATED form my position as General Manager for Quality Inn & Suites to include Roxanna.

I am informing you that based on your decision to replace me prior to a definite confirmation from my doctor of my illness (cancer) you are in violation of the United States American Disability Act.

I have begun to make arrangements to leave the hotel late on the 20th or first thing on the 21st. (and yes you are putting us out !!!) you know we don't have jobs nor a place to move into immediately back in San Antonio and with X-MAS and the NEW YEAR just days away makes it very stressful for both of us. I will need you to overnight my last weeks paycheck and Roxana's to include my $500 00 bonus still due from October's revenue goals by the 20th of December

(4)

# EXHIBIT D



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

EEOC Charge Number: 451-2006-00038

Mario Alberto Mendiola                                     Charging Party
270 W. Petaluma
San Antonio, TX 78221

     v.

I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites        Respondent
    and Convention Center
2705 East South Boulevard
Montgomery, AL 36116

<u>DETERMINATION</u>

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of the Americans with Disabilities Act of 1990, as amended (ADA). Timeliness and all other requirements for coverage have been met.

Charging Party alleges that he was discharged because Respondent perceived him to be disabled. Respondent denies the allegation and contends that Charging Party resigned.

The investigation revealed that Charging Party informed Respondent that he had submitted blood for testing and that depending on the results, he might later decide to relocate to Texas. Evidence showed that Respondent responded by discharging Charging Party. Evidence indicated that Charging Party did not receive his diagnosis until after his discharge. I have determined that the evidence obtained during the investigation establishes reasonable cause to believe a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. Please complete the enclosed Invitation to Conciliate and return it to the Commission at the above address no later than ___29 JAN 2007___. You may fax your response directly to (205) 212-2105 to the attention of Sheri Guenster. Failure to respond by ___29 JAN 2007___ will indicate that you are not interested in conciliating this matter and the Commission will determine that efforts to conciliate this charge, as required by the ADA, have been unsuccessful.

If Respondent declines to participate in conciliation discussions or when, for any other reason, a Conciliation Agreement acceptable to the District Director is not obtained, the Director will



03/09/2007 12:07 TEL 2106482781          SENO TRUCKING                                    ☐018

Letter of Determination
420-2006-00038
Page 2 of 2

inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On behalf of the Commission,

Date   1 2 JAN 2007

Delner Franklin-Thomas
District Director

Enclosure:   Invitation to Conciliate

Copy:      Mr. Edward I. Zwilling
           SCHWARTZ, ZWEBEN, SLINGBAUM, L.L.P.

(16)

# EXHIBIT E

COPY

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### INVITATION TO PARTICIPATE IN CONCILIATION DISCUSSIONS

Section 706(b) of Title VII of the Civil Rights Act of 1964, as amended, requires that when the Commission determines there is reasonable cause to believe the charge is true, it shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. This invitation is being issued to both parties to determine their willingness to engage in such conciliation discussions. If either party declines discussion, or the Commission is unable to secure an acceptable agreement, the District Director shall inform both parties, in writing, of alternatives for obtaining relief available to the Charging Party and the Commission.

Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

| DATE 1 2 JAN 2007 | CHARGE NUMBER 451-2006-00038 |
|---|---|

*PLEASE COMPLETE THE FOLLOWING INFORMATION AND RETURN TO EEOC BY MAIL OR FACSIMILE (205/212-2105):*

| TO: U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION - Birmingham District Office Ridge Park Place 1130 - 22 Street South, Suite 2000 Birmingham, AL 35205-2070 | FROM: *(Name and address of charging party or respondent)* Mario Mendiola 270 W. Petaluma San Antonio, Tx 78221 |
|---|---|

*I ☒ WILL ☐ WILL NOT ENGAGE IN CONCILIATION DISCUSSIONS.*

| SUGGESTED | |
|---|---|
| DATE Any - but need at least 2 weeks notice for travel arrangements | TIME Any |

LOCATION
Birmingham, Alabama

COMMENTS

| DATE 1/25/07 | TELEPHONE NUMBER WHERE SIGNOR CAN BE REACHED C/O 205-871-8089 |
|---|---|
| TYPED NAME OF CHARGING PARTY/RESPONDENT Mario Mendiola | SIGNATURE Mario Mendiola by Ed Zwilling attorney |

EEOC FORM 153

⑲

EXHIBIT F

EEOC Form 161-A (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To: | Mr. Mario A. Mendiola<br>270 W. Petaluma<br>San Antonio, TX 78221 | From: | U.S. EEOC<br>Birmingham District Office<br>Ridge Park Place, Suite 2000<br>1130 - 22nd Street, South<br>Birmingham, AL 35205 |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 451-2006-00038 | Sheri Guenster, Investigator | (205) 212-2059 |

**TO THE PERSON AGGRIEVED:**

This Notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that is will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## – NOTICE OF SUIT RIGHTS –
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Delner Franklin-Thomas*

**Delner Franklin-Thomas, District Director**

2 8 FEB 2007

*(Date Mailed)*

Enclosure(s)

cc: | Mr. Edward I. Zwilling<br>Schwartz, Zweben & Slingbaum, L.L.P.<br>300 Office Park Drive, Suite 217<br>Birmingham, AL 35223 | Mr. John Tampa<br>Owner<br>I.T. Montgomery, L.L.C.<br>715 College Drive<br>Dalton, GA 30720 |

