IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| MARIO MENDIOLA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) |
| VISION HOSPITALITY, L.L.C., I.T. | ) CIVIL ACTION NO. |
| MONTGOMERY, L.L.C., D/B/A | ) CV- 2:07 CV 469-MEF |
| QUALITY INN & SUITES | ) |
| CONFERENCE CENTER, AND J.T. | ) |
| HOTELS, LLC, D/B/A QUALITY | ) |
| INN & SUITES CONFERENCE | ) |
| CENTER | ) |
| | ) |
| DEFENDANTS. | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

**COME NOW** Defendants Vision Hospitality, L.L.C., I.T. Montgomery, L.L.C. and Rule 19 Defendant, J.T. Hotels, L.L.C, ("Defendants"), and hereby file this Brief in Support of Renewed Motion for Summary Judgment. As is demonstrated herein, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

### PROCEDURAL POSTURE

Mendiola filed this action under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, against Vision Hospitality, L.L.C., I.T. Montgomery,

DOCSBHM\1580782\1\

L.L.C. and John Tampa on May 24, 2007. Upon joint stipulation of the parties, the claims against John Tampa were dismissed on August 28, 2007. On March 14, 2008, then remaining defendants Vision Hospitality, L.L.C. and I.T. Montgomery, L.L.C. filed a Motion for Summary Judgment with a brief and evidence in support thereof. The evidence submitted in support of summary judgment consisted of the sworn declarations of Ioan (John) Tampa, Beverly Woods and Timothy Banks. Plaintiff opposed the motion with a brief and evidence, including the Affidavit of Mario Mendiola, but Plaintiff also requested the court to continue the summary judgment proceeding so that the parties could engage in additional discovery. On May 12, 2008, this Court continued the summary judgment proceeding and entered a new Scheduling Order.

The depositions of John Tampa ("Tampa"), Mario Mendiola ("Mendiola"), Beverly Woods ("Woods") and Timothy Banks ("Banks") were taken on May 15, 2008. Based upon the deposition testimony of Tampa that I.T. Montgomery, L.L.C. had transferred assets to J.T. Hotels, L.L.C., Plaintiff moved to amend his complaint to add J.T. Hotels, L.L.C. as a Rule 19 defendant. This Court granted the Motion to Amend on July 23, 2008.

With this Renewed Motion for Summary Judgment, Defendants have submitted a Supplemental Appendix of Evidence consisting of the depositions of Tampa, Mendiola, Woods and Banks. The testimony in the depositions of Tampa,

Woods and Banks is completely consistent with their prior declaration testimony that they did not and could not have regarded Mendiola as disabled. Further, the testimony of Mendiola himself confirms that he did not give anyone at I.T. Montgomery sufficient information from which they could have concluded that he was disabled. Therefore, as argued in Defendant's original Brief in Support of Motion for Summary Judgment and as argued herein below, Defendants are entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

Tampa is the managing member of I.T. Montgomery, L.L.C., an Alabama limited liability company. (Tampa Declaration ¶ 2) For the time period relevant to this case, I.T. Montgomery, L.L.C. was doing business as Quality Inn & Suites and Convention Center located at 2705 East South Boulevard, Montgomery, Alabama. (*Id.*)[1] On April 27, 2005, on behalf of I.T. Montgomery, L.L.C., Tampa agreed to employ Mendiola as the general manager of the Quality Inn & Suites. (Tampa Declaration ¶ 3) The terms of Mendiola's employment were included in a letter Mendiola wrote to Tampa on April 27, 2005. (*Id.*; Declaration Exhibit A)

Mendiola moved from his home in Texas to the Quality Inn & Suites and began working as the general manager in May of 2005. (Tampa Declaration ¶ 3) Roxanne Luker, who was Mendiola's girlfriend, also moved with him to live and

---

[1] The hotel property is now being operated by J.T. Hotels, L.L.C. (Tampa Deposition, p. 20, ln18-21; p. 26, ln 15-23), which has been added as a Rule 19 defendant.

work at the Quality Inn & Suites. (*Id.*) As general manager of the Quality Inn & Suites, Mendiola was employed by I.T. Montgomery, L.L.C. (Tampa Declaration ¶ 4) Mendiola was not employed by Vision Hospitality, L.L.C, which does not own or operate the Quality Inn & Suites. (*Id.*; Tampa Deposition p. 18, ln 10-23; p. 19. ln 1-21)

In early December of 2005, Mendiola was receiving treatment from a Dr. Lambert for diabetes. (Mendiola Deposition p. 56, ln 9-22). Around December 2, 2005, Dr. Lambert told Mendiola that he had an irregular blood count, from which Dr. Lambert concluded that Mendiola had leukemia. (Mendiola Deposition p. 56, ln 9-22; p. 57, ln 11-17) Dr. Lambert then referred Mendiola to a Dr. Morrison (Mendiola depo. p. 56, ln 20-22), and on December 7, 2005, Mendiola visited Dr. Morrison's office for additional tests. (Mendiola depo. p. 61, ln 13-16) On that same date, December 7, 2005, Mendiola called Tampa and told him that he had tentatively been diagnosed with leukemia. (Mendiola depo. p. 61, ln 17-20; p. 64, ln 10-23) According to Mendiola, he told Tampa that he would need additional tests and that, if he was in a late stage of the disease, he would return to Texas for treatment. (Mendiola depo. p. 64, ln 13-18) Mendiola did not tell Tampa anything about how his condition might affect his ability to work. (Mendiola depo. p. 66, ln 21-23; p. 67, ln 1-2)

Mendiola described the totality of his conversation with Tampa regarding the nature of his condition as follows:

> I told him that the doctor had viewed the doctor's results and that he had wanted to run his own conclusion of the results, so he ran some further tests. In addition to that, I also stated to him that Dr. Morrison stated to me that based on the conclusion of his results and if it was true about the leukemia, then further testing would be needed to find out what stage the leukemia would be at, at which point they would want to do a bone marrow biopsy. That was my conversation with him.

(Mendiola depo. p. 65, ln 5-18) The only information Tampa had regarding Mendiola's condition came from this conversation with Mendiola. (Mendiola depo. p. 98, ln 20-22)

Tampa testified by declaration and deposition that Mendiola informed him that he might have leukemia and that he and Luker would be returning to Texas for treatment. (Tampa Declaration ¶ 5; Tampa depo. p. 44, ln 11-22) Tampa understood Mendiola to be resigning from his employment. (Tampa Declaration ¶ 5) Mendiola told Tampa that he would need a week to ten days to get things in order to leave. (*Id.*) Tampa began looking for a replacement for Mendiola's general manager position. (*Id.*) On December 12, 2005, Tampa informed Mendiola by memo that he had located a new general manager who was to start on December 20, 2005. (Tampa Declaration ¶ 5; Declaration Exhibit B) Mendiola confirmed in his deposition that the December 12, 2005 memo did not state that he

was terminated and that Tampa never told him he was terminated. (Mendiola depo. p. 75, ln 9-23; p. 76, ln 1-6) Tampa did not tell Mendiola that he was terminated because Tampa already understood that Mendiola had resigned. (Tampa Declaration ¶ 5)

Director of Sales Beverly Woods and Assistant Manager Timothy Banks testified through declaration and deposition that Mendiola also told them that he had been diagnosed with leukemia and was going to Texas for treatment. (Woods Declaration ¶ 3; Banks Declaration ¶ 3; Woods depo. p. 15, ln 10-23; p. 16, ln 1-18; Banks depo. p. 14, ln 3-23; p. 15, ln 1-5) According to both Woods and Banks, in December of 2005, the management of the hotel, including Woods, Banks and Mendiola participated in a conference call with Tampa on speaker phone, and Tampa announced that Mendiola was leaving the company and moving back to Texas. (Woods depo. p. 17, ln 9-17; Banks depo. p. 15, ln 18-23) During the call, Mendiola did not say anything to object or contradict Tampa's announcement. (Woods depo. p. 18, ln 9-11; Banks depo. p. 27, ln 14-23; p. 28, ln 1)

At the time of Mendiola's separation from employment, Tampa did not consider Mendiola to be disabled. (Tampa Declaration ¶ 6) Tampa did not know anything about Mendiola's medical condition other than what Mendiola had told him about possibly having leukemia. (*Id.*; Mendiola depo. p. 98, ln 20-22) Tampa did not know if or how Mendiola's condition limited his ability to work or to

perform other major life activities, and Tampa made no assumptions in this regard. (Tampa Declaration ¶ 6; Mendiola depo. p. 66, ln 21-23; p. 67, ln 1-2) Tampa did not know whether Mendiola could perform his job as general manger or whether he could perform other jobs. (*Id.*) Tampa did not know whether Mendiola's condition was temporary or permanent or how long Mendiola's treatment would take. (Tampa Declaration ¶ 6)

After his separation from employment, Mendiola filed a charge of discrimination with the EEOC in which he named Quality Inn & Suites as his employer. (Tampa Declaration ¶ 7; Declaration Exhibit C) Tampa responded to the charge on behalf of I.T. Montgomery, L.L.C. (Tampa Declaration ¶ 7; Declaration Exhibit D) Vision Hospitality was not named in the charge and did not respond to the charge. (Tampa Declaration ¶ 7)

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party must initially advance a showing that "there are no genuine issues of material fact that should be decided at trial." *Weston Group Nurseries, Inc. v.*

*Ergas*, 167 F.3d 1354, 1361 (11th Cir. 1999). An issue of fact is "genuine" only if "a reasonable trier of fact, considering the record evidence, could find for the non-moving party." *Lee v. Etowah Co. Bd. Of Ed.*, 963 F.2d 1416, 1425 (11th Cir. 1992).

Because Defendants have carried their initial burden, Mendiola may not rest upon the mere allegations or denials in his pleadings. Mendiola must establish a genuine issue of material fact, as determined by an examination of the substantive law. *See Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995). To "simply show that there is some metaphysical doubt as to the material facts" is insufficient. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The evidence must be sufficient to "return a verdict" at trial for the party opposing the entry of summary judgment. *Matsushita,* 475 U.S. at 586. For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

## ARGUMENT

### I. Mendiola Cannot State a Prima Facie Case of Disability Discrimination Because He Did Not Have a Disability.

In order to state a *prima facie* case of ADA discrimination, a plaintiff must demonstrate that he: (1) had a disability; (2) was otherwise qualified to perform the job; and (3) was discriminated against based on his disability. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005). Because

Mendiola cannot demonstrate that he is disabled as defined by the ADA, Defendants[2] are entitled to summary judgment.

To state a claim for unlawful termination under the ADA, a plaintiff must first prove that he has a disability as defined by the Act. *Standard v. A.B.E.L Services, Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998), citing *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). A disability is defined by the ADA as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of having such an impairment; or (C) being regarded as having such an impairment." *Standard*, at 1327 (11th Cir. 1998), citing 42 U.S.C. § 12102(2). In his Complaint and deposition, Mendiola expressly acknowledges that, at the time of his termination, his condition was **not** substantially limiting. (Complaint ¶ 4.1; Mendiola depo. p. 98, ln 13-19) He bases his claim of disability solely on the third prong of the definition alleging that Defendants regarded him as being disabled. (*Id.*)

In order to regard an employee as disabled under 42 U.S.C. § 12102(2)(C), an employer must regard the employee has having an impairment that substantially limits a major life activity. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143,

---

[2] As argued below, Vision Hospitality, L.L.C. is not a proper defendant to the case in any event.

1157 (11th Cir. 2004), citing *Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1228-29 (11th Cir. 1999); *Standard*, 161 F.3d at 1327. Mendiola contends that Defendants perceived him as "having a substantially limiting impairment," (Complaint ¶ 4.1) but he does not identify any particular major life activity in which Defendants perceived him to be disabled. With his prior brief in opposition to summary judgment, Mendiola's counsel confirmed that Mendiola contends that Defendants perceived him to be substantially limited in the major life activity of working. (See Plaintiffs Opposition to Summary Judgment filed March 31, 2008, pp. 9-10) As explained in *Collado*, "being 'regarded as unable to perform only a particular job,' however, 'is insufficient, as a matter of law, to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working.'" *Collado*, 419 F.3d at 1157, quoting *Murphy v. United Parcel Service*, 527 U.S. 516, 525, 119 S.Ct. 2133, 2139, 144 L.Ed.2d 484 (1999). Instead, a plaintiff must prove that the employer considered him "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Collado*, 419 F.3d at 1157, quoting 29 C.F.R. § 1630.2(j)(3)(i).

The Eleventh Circuit Court of Appeals opinion in *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213 (2004) is instructive on the application of the "regarded as disabled" definition to facts substantially similar to the case at bar. In *Carruthers*, the employer learned that its employee had been diagnosed with a

bilateral hand strain, and, very shortly thereafter, placed a classified advertisement for her replacement and then terminated her employment. In granting the employer's request for judgment as a matter of law on the issue of "regarded as disabled," the court explained as follows:

> We conclude that no reasonable jury could find that Carruthers' evidence established that BSA perceived her impairment as one that substantially limited the major life activities of working or performing manual tasks. Carruthers herself admitted at trial that BSA's knowledge of her condition was limited to her physician's diagnosis of a bilateral hand strain/sprain and her work restrictions. Aside from BSA's awareness of her initial diagnosis and work restrictions, the only other support Carruthers offers for her contention that BSA perceived her to be disabled is the fact that (1) BSA informed her that she would be terminated if she could not maintain a full-time schedule and (2) BSA placed an advertisement for her replacement shortly after learning of her inability to perform the basic tasks of her position. Based on this record, we find no indication that BSA regarded, or would have had any reason to regard, Carruther's condition as rendering her incapable of performing "either a class of jobs or a broad range of jobs in various classes."

*Carruthers*, 357 F.3d at 1217, quoting 29 C.F.R. § 1630.2(j)(3)(i).

In *Carruthers* the Eleventh Circuit also pointed out that, in order to regard an employee as disabled, the employer must perceive the employee's limitations as permanent or long-term. *Carruthers*, 357 F.3d at 1217, citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The court reached a similar conclusion in *Standard v. A.B.E.L. Services* stating: "Given

. . . the evidence that all of the decision makers perceived Standard as having a temporary injury, we hold that Standard has failed to present sufficient evidence to allow a rational juror to find him disabled under § 12102(2)(C) of the ADA." *Standard*, 161 F.3d at 1328.

Mendiola's bare allegation that Defendants regarded him as disabled is not supported by the record evidence. Mendiola's immediate supervisor was I.T. Montgomery L.L.C.'s managing member, John Tampa. Tampa has testified through sworn declaration that he did not regard Mendiola as having an impairment that substantially limited a major life activity. (Tampa Declaration ¶ 6) As confirmed by the deposition testimony of Tampa and Mendiola, Tampa drew no conclusions regarding Mendiola's level of impairment because he did not know much about Mendiola's condition at all. (*Id*.; Mendiola depo. p. 98, ln 20-22) Tampa, along with I.T. Montgomery employees Beverly Woods and Timothy Banks, only knew what Mendiola told them—that he may have leukemia and that he would be returning to Texas for treatment. (Tampa Declaration ¶ 5; Tampa depo. p. 44, ln 11-22; Woods depo. p. 15, ln 10-23; Banks depo. p. 14, ln 3-23; p. 15, ln 1-5) Tampa did not know whether Mendiola was limited from performing the job of general manager or any other job because Mendiola gave him no information about his ability to perform work. (Mendiola depo. p. 66, ln 21-23; p. 67, ln 1-2) Tampa did not know whether Mendiola's condition was temporary or

permanent.³ (Tampa Declaration ¶ 6) However, because Mendiola indicated that he would be moving back to Texas, Tampa began his search for a new general manager.

There is no evidence that I.T. Montgomery regarded Mendiola as substantially limited from performing any job, much less that it regarded him as restricted from a class or broad range of jobs. Like the employers in *Carruthers* and *Standard*, I.T. Montgomery only knew that its employee was temporarily unavailable to perform his job. Such evidence is plainly insufficient to demonstrate that I.T. Montgomery regarded Mendiola as disabled. *Standard*, 161 F.3d at 1328. Because Mendiola cannot produce sufficient evidence for a reasonable jury to find that he suffered from a disability as defined by the ADA, Defendants are entitled to judgment as a matter of law. *See Collado*, 419 F.3d at 1158; *Carruthers*, 357 F.3d at 1217; *Standard*, 161 F.3d at 1328. Recent decisions from courts in this district have granted summary judgment against plaintiffs asserting that they were regarded as disabled. *See Hughes v. Dale County Medical Center*, Civil Action No. 1:06CV595-SRW, 2008 WL 1757772 at *7 (April 16, 2008 M.D. Ala.)(employee who underwent surgery to remove two benign brain tumors and subsequently took leave for panic attacks not regarded as disabled even

---

³ Based upon Mendiola's Complaint and deposition testimony, his condition was neither permanent nor substantially limiting. (Complaint ¶ 3.5, 4.1; Mendiola depo. p. 87, ln 22-23; p. 88, ln 1-12; p. 98, ln 13-19)

though she was terminated two days after returning from medical leave); *Puckett v. McPhillips Shinbaum*, Civil Action No. 2:06CV1148-ID, 2008 WL 906569 at *19 (March 31, 2008 M.D. Ala.)(paralegal who had a kidney removed, had a stroke and was diagnosed and treated for prostate cancer not regarded as disabled by employer because there was insufficient evidence that employer "regarded [employee] as physically unable, or substantially limited in his ability to perform his job as paralegal or any other job.")

## II.  Vision Hospitality Cannot Be Liable Under The ADA Because It Was Not Plaintiff's Employer.

In his Complaint, Mendiola asserts his claim of employment discrimination under the ADA against Vision Hospitality, L.L.C. and I.T. Montgomery, L.L.C.[4] Mendiola apparently contends that he was employed by both entities when he served as the general manager of the Quality Inn & Suites Conference Center located on East South Boulevard in Montgomery, Alabama. The Quality Inn & Suites Conference Center is owned and operated by I.T. Montgomery, L.L.C., and I.T. Montgomery, L.L.C. was Mendiola's employer. (Tampa Declaration ¶ 4; Tampa depo. p. 18, ln 10-23; p. 19, ln 1-21) Vision Hospitality, L.L.C. has no ownership interest in the Quality Inn & Suites Conference Center, and it was not Mendiola's employer. (*Id.*)

---

[4] The hotel property is now being operated by J.T. Hotels, L.L.C. (Tampa Deposition, p. 20, ln18-21; p. 26, ln 15-23), which has been named as a Rule 19 defendant.

The employment discrimination provisions of the ADA provide for only employer liability. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Moreover, a claim for employment discrimination under the ADA necessarily alleges an adverse employment action taken by a covered employer. *See Doe v. Dekalb County School District*, 145 F.3d 1441, 1447 (11th Cir. 1998). Because Vision Hospitality, L.L.C. was not Mendiola's employer, it could not have taken any employment action against Mendiola and it cannot be liable for his claims of employment discrimination under the ADA.

### III. Vision Hospitality Cannot Be Liable Under The ADA Because It Was Not Named in An EEOC Charge.

Filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is a prerequisite to bringing suit under the ADA. *Maynard v. Pneumatic Products, Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)(citations omitted). When the EEOC completes its investigation but does not file suit or obtain a conciliation agreement, it then gives notice to the claimant that a civil action may be brought "against the respondent named in the charge." *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999), quoting 42 U.S.C. § 2000e-5(f)(1). In his charge of discrimination, Mendiola named Quality Inn & Suites as the respondent. (Tampa Declaration Exhibit C) As noted above, I.T. Montgomery, L.L.C. is the owner and operator of the Quality Inn & Suites and

was Mendiola's employer. I.T. Montgomery, L.L.C. d/b/a Quality Inn & Suites answered the charge as the respondent. (Tampa Declaration Exhibit D) Because I.T. Montgomery, L.L.C. was the only respondent to the charge, it is the only proper defendant for this ADA lawsuit. Moreover, because Vision Hospitality, L.L.C. was not the respondent to the EEOC charge filed by Mendiola, it cannot be a defendant to this action.

## CONCLUSION

Based upon all the foregoing, there are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law.

Respectfully submitted this 5th day of September, 2008.

/s/ Kyle T. Smith
_____

Kyle T. Smith (Bar No. ASB-6752-I72K)
Attorney for Defendants
VISION HOSPITALITY LLC, I.T. MONTGOMERY LLC and J.T. HOTELS, LLC

**OF COUNSEL:**

**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.: (205) 930-5100
Fax: (205) 930-5335
northerndistrict@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

> D. Jason Britt, Esq.
> Morris & McCannally, LLC
> 50 Wisteria Place
> P.O. Box 490
> Millbrook, AL 36054
>
> David A. Bryant, Jr., Esq.
> 18 Augusta Pines Drive
> Suite 200E
> Spring, TX 77389

/s/ Kyle T. Smith
_____
Of Counsel